UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MARK MCCARTHY,

                     Plaintiff,

           -v-                              5:19-CV-1386

MEGAN J. BRENNAN,
Postmaster General,

                  Defendant.[1]


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                            OF COUNSEL:

MARK MCCARTHY
Plaintiff, Pro Se
30473 County Route 4
Cape Vincent, NY 13634

HON. ANTOINETTE T. BACON           EMER M. STACK, ESQ.
Acting United States Attorney for the     Ass't United States Attorney
    Northern District of New York
Attorneys for Defendant
100 South Clinton Street
P.O. Box 7198
Syracuse, NY 13261

DAVID N. HURD
United States District Judge

## <u>MEMORANDUM–DECISION and ORDER</u>

## I.  <u>INTRODUCTION</u>

      On November 8, 2019, *pro se* plaintiff Mark McCarthy ("McCarthy" or "plaintiff"), a

postal employee, filed this action against defendant Megan Brennan, then the Postmaster

---

[1]  In May of 2020, Louis DeJoy succeeded Megan Brennan as the U.S. Postmaster General.  The
Clerk of the Court will be directed to amend the caption accordingly.  *See* FED. R. CIV. P. 25(d).

General of the United States (the "Postmaster General" or "defendant"), alleging that the

postal service discriminated against him on the basis of his sex and disability in violation of

Title VII of the Civil Rights Act of 1964.  Dkt. No. 1.  Along with his complaint, plaintiff sought

leave to proceed *in forma pauperis*; that is, without paying the filing fee and certain costs

ordinarily associated with a civil action in federal court.  Dkt. No. 2 ("IFP Application").

On November 14, 2019, U.S. Magistrate Judge Andrew T. Baxter recommended that

McCarthy's IFP Application be denied and plaintiff be directed to pay the filing fee.  Dkt. No.

4.  While Judge Baxter's recommendation remained pending, plaintiff filed a First Amended

Complaint within the time period allotted for amending a pleading as of right under Rule 15 of

the Federal Rules of Civil Procedure.  Dkt. No. 5.  And just over five weeks later, with Judge

Baxter's recommendation still pending, plaintiff initiated a second *pro se* civil action in this

District that named the same defendant:  the Postmaster General.  *McCarthy v. Brennan*,

5:20-CV-7-GTS-ATB, Dkt. No. 1.

Unlike his first case (this case), McCarthy's second action was assigned to Chief U.S.

District Judge Glenn T. Suddaby.  This second action is relevant to understanding the

procedural history of our case for two reasons:  first, plaintiff had paid the filing fee in the

second action instead of seeking IFP status; and second, the pleading in the second action

looked an awful lot like an attempt to supplement or amend the complaint in the first

action.  Accordingly, Judge Suddaby entered a text order directing plaintiff to:

> SHOW CAUSE in writing, within SEVEN (7) DAYS of the issuance
> of this Text Order, why the following four steps should not promptly
> be taken:  (1) why his Complaint in this action should not be filed as
> the Second Amended Complaint in Action No. 19-CV-1386 pending
> before U.S. District Judge David N. Hurd; (2) why the $400 filing fee
> paid in this action should not be applied to Action No. 19-CV-1386
> (in compliance with the recommendation of Chief U.S. Magistrate

Judge Andrew T. Baxter in that action); (3) why summonses bearing Action No. 19-CV-1386 should not be reissued to Plaintiff so that he may serve Defendant in that action (which will be his responsibility because he will have paid the filing fee in that action); and (4) why this action should not thereafter be CLOSED (so that he may pursue his Complaint in this action as his Second Amended Complaint in Action No. 19-CV-1386).

*McCarthy v. Brennan*, 5:20-CV-7-GTS-ATB, Dkt. No. 5.

After this seven-day response period elapsed without any response from McCarthy, Judge Suddaby ordered the Clerk of the Court to close the second case, to apply the $400 filing fee to the first action, and to docket the pleading from the second action as the Second Amended Complaint in plaintiff's original case (this case). *Id*. at Dkt. No. 6.

On January 27, 2020, the Clerk complied with Judge Suddaby's instructions, applying his $400 filing fee to this action and docketing the Second Amended Complaint as the operative pleading in this case. These two developments mooted Judge Baxter's then–pending recommendation about plaintiff's request for IFP status. Dkt. No. 8.

While these issues were being sorted out by the Court, McCarthy was having his own troubles serving the Postmaster General with effective process. On January 27, 2020, the Clerk had mailed to plaintiff a summons for the named defendant along with a blank form to be completed as proof of service. Dkt. No. 7.

However, on March 31, 2020, Judge Baxter entered a text order in which he observed that plaintiff had failed to file any proof of service upon the Postmaster General, and that the sixty-day period within which to do so had expired. Dkt. No. 9. Plaintiff was directed to advise the Court in writing of the status of this action by April 17, 2020. *Id*. Plaintiff was also warned that failure to complete service or otherwise follow the Court's directives might well result in the dismissal of this action. *Id*.

On April 14, 2020, McCarthy filed a letter motion requesting an extension of time in which to complete service.  Dkt. No. 12.  Plaintiff also filed a motion to appoint counsel.  Dkt. No. 13.  Judge Baxter granted plaintiff's request for an extension of time to complete service and ordered that plaintiff would have until June 1, 2020 to do so.  Dkt. No. 14.  However, Judge Baxter denied plaintiff's request to appoint counsel without prejudice to renew at a later date.  *Id*.  Thereafter, the Clerk of the Court reissued a summons for the Postmaster General.  Dkt. No. 10.  This time the Clerk also issued summonses for the U.S. Attorney's Office and the U.S. Attorney General, both of whom needed to be properly served for the reasons explained *infra*.  *Id*.

On June 3, 2020, Judge Baxter entered another text order in which he observed that McCarthy had still failed to timely file proper proofs of service.  Dkt. No. 15.  Judge Baxter directed plaintiff to the relevant Federal Rule of Civil Procedure governing service on governmental defendants and reiterated his warning that failure to complete service or follow the Court's other directives could result in the dismissal of his case.  *Id*.

On June 5, 2020, McCarthy filed two proofs of service:  in the first, the process server successfully served the Postmaster General; in the second, the process server had unsuccessfully attempted service on the U.S. Attorney's Office.  Dkt. Nos. 16-17.  According to the process server's letter, service on the U.S. Attorney's Office had been unsuccessful because it was only accepting service via certified mail due to COVID-19.  Dkt. No. 17.

On June 8, 2020, Judge Baxter directed McCarthy to re-attempt service on the U.S. Attorney's Office via certified mail.  Dkt. No. 18.  Thereafter, plaintiff filed a letter certifying that he had sent copies of the necessary paperwork via certified mail to the Postmaster General, the U.S. Attorney's Office in Syracuse, New York, and to the U.S. Department of

Justice in Washington, D.C.  Dkt. No. 19.

On July 2, 2020, the Postmaster General moved under Federal Rule of Civil Procedure ("Rule") 12(b)(5) to dismiss McCarthy's complaint on the basis of improper service or, alternatively, under Rule 12(b)(6) for failure to state any plausible claims for relief.  Dkt. No. 21-1.  The motion has been fully briefed and will be considered on the basis of the submissions without oral argument.

## II.  **BACKGROUND**

The following facts are taken from McCarthy's operative complaint, Dkt. No. 6, and will be assumed true for the purpose of resolving the Postmaster General's motion to dismiss.

On January 25, 2019, McCarthy, a postal service employee, caught Patrick Merithew, the "officer in charge" of the Dexter, New York Post Office, "stealing postal stationery and postage.  Dkt. No. 6 at 3.[2]  Plaintiff "called the Office of Inspection [*sic*] General for the United [States] Postal Serivce [*sic*]" to report the theft, but because the U.S. Government "was under furlough," he "received a voice message telling [him] to call [his] local police department."  *Id*.  Plaintiff duly reported the theft to the Dexter Police Department.[3]  *Id*.

On January 29, 2019, four days after reporting the Merithew's misconduct, McCarthy "received an email" from the William Snyder, the Postmaster of the Canton, New York Post Office, "stating that [plaintiff] would not be considered for the Postmast[er] position of Dexter."  Dkt. No. 6 at 3.[4]  As plaintiff explains, Merithew "had at one time worked under" Snyder at the Canton Post Office.  *Id*.  According to plaintiff, reporting Merithew's theft

---

[2]  Pagination corresponds to CM/ECF.

[3]  A copy of the police report is attached.  Dkt. No. 6 at 16-18.

[4]  A copy of the letter memorializing plaintiff's rejection is attached.  Dkt. No. 6 at 19.

caused Snyder to pass him over for promotion to Dexter Postmaster in favor of Darcia Brimmer. *Id*.

McCarthy alleges that Brimmer "has a relationship" with Alan LaValley, the Postmaster of the Massena, New York Post Office. Dkt. No. 6 at 3. Plaintiff further alleges that LaValley "was the top contender to be the new Post Office Operations Manager," but because of their relationship Brimmer "could not work directly below him" in the organizational chain of command. *Id*. According to plaintiff, Brimmer and LaValley worked out a *quid pro quo*: Brimmer would become of the Postmaster of the Dexter Post Office and, in exchange, LaValley "relinquished [*sic*] his interest in becoming the Post Office Operations Manager." *Id*.

McCarthy does not explain how Snyder, the Review Committee Chairperson for the Dexter Postmaster job opening, is connected to this alleged exchange. *See generally* Dkt. No. 6. Even so, plaintiff alleges in his first cause of action that "[r]eporting the theft of postal stationary [*sic*] and postage resulted in retaliation [*sic*] which lead [*sic*] to a sexually harassing promotion of Darcia Brimmer, which resulted in [his] demotion to custodian and a reduction of hours." *Id*.

On June 5, 2019, McCarthy alleges that he filed charges with the state and federal employment commissions. Dkt. No. 6 at 4. In his opposition, plaintiff has also attached an administrative decision from the U.S. Equal Employment Opportunity Commission ("EEOC"). Pl.'s Opp'n, Dkt. No. 24 at 9-14. Although this document is dated August 8, 2019, it appears to arise from some earlier dispute between plaintiff and his employer. *See id*.

McCarthy seeks "[a] transfer into an area without nepotism, sexual harassment and with gender equality. Back pay and legal fees. A full investigation from the FBI because there is a pattern of behavior of organized crime under the RICO Act." Dkt. No. 6 at 5.

## III. <u>LEGAL STANDARDS</u>

### A. <u>Rule 12(b)(5)</u>

Rule 12(b)(5) permits a party to move for dismissal of a complaint based on inadequate service of process.  F ED. R. C IV. P. 12(b)(5).  "In considering a Rule 12(b)(5) motion to dismiss for insufficient service of process, a court must look[ ] to matters outside the complaint to determine whether it has jurisdiction." *Cassano v. Altshuler*, 186 F. Supp. 3d 318, 320 (S.D.N.Y. 2016).  "Once a defendant challenges the sufficiency of service of process, the burden of proof is on the plaintiff to show the adequacy of service." *George v. Prof'l Disposable Int'l, Inc.*, 221 F. Supp. 3d 428, 432 (S.D.N.Y. 2016) (cleaned up).

### B. <u>Rule 12(b)(6)</u>

"To survive a Rule 12(b)(6) motion to dismiss, the '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Forjone v. Dep't of Motor Vehicles*, 414 F. Supp. 3d 292, 298 (N.D.N.Y. 2019) (quoting *Ginsburg v. City of Ithaca*, 839 F. Supp. 2d 537, 540 (N.D.N.Y. 2012)).  "Dismissal is appropriate only where plaintiff has failed to provide some basis for the allegations that support the elements of his claims." *Id*.

"When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor." *United States v. Bedi*, 318 F. Supp. 3d 561, 564-65 (N.D.N.Y. 2018) (citation omitted).  "In making this determination, a court generally confines itself to the facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken." *Forjone*, 414 F. Supp. 3d at 298 (citation and internal quotation marks omitted).

## IV. DISCUSSION

As an initial matter, McCarthy is proceeding *pro se* and therefore his complaint, "however inartfully pleaded, must be held to less stringent standards than [a] formal pleading[ ] drafted by lawyers." *Ahlers v. Rabinowitz*, 684 F.3d 53, 60 (2d Cir. 2012) (citation and internal quotation marks omitted). As the Second Circuit has repeatedly instructed, a complaint filed *pro se* "must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). "This is particularly so when the *pro se* plaintiff alleges that his civil rights have been violated." *Forjone v. Dep't of Motor Vehicles*, 414 F. Supp. 3d 292, 298 (N.D.N.Y. 2019) (cleaned up).

However, "all normal rules of pleading are not absolutely suspended" when a plaintiff is proceeding *pro se*. *Jackson v. Onondaga Cty.*, 549 F. Supp. 2d 204, 214 (N.D.N.Y. 2008) (McAvoy, J.) (cleaned up). Even a *pro se* plaintiff must plead sufficient factual allegations to suggest an entitlement to relief. *See id*. Simply put, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citations omitted).

### A. Rule 12(b)(5)

With the contours of that standard in mind, an analysis of the Postmaster General's motion to dismiss begins with the Rule 12(b)(5) challenge to service. *See, e.g.*, *Dynegy Midstream Servs. v. Trammochem*, 451 F.3d 89, 94 (2d Cir. 2006) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.").

"In deciding a Rule 12(b)(5) motion, a Court must look to Rule 4, which governs the content, issuance, and service of a summons." *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 64 (S.D.N.Y. 2010).  Rule(4)(i) governs here because the named defendant is a federal agency officer or employee.  Whether a federal defendant is sued individually or in an official capacity, a plaintiff who seeks to assert a claim[5] against a federal officer or employee must serve the named defendant *and* the United States.  FED. R. CIV. P. 4(i)(2)–(3).

To properly effect service upon the United States, a plaintiff must:

| | | |
|---|---|---|
| (A) | (i) | deliver a copy of the summons and of the complaint to the United States attorney for the district where the action is brought—or to an assistant United States attorney or clerical employee whom the United States attorney designates in a writing filed with the court clerk—or |
| | (ii) | send a copy of each by registered or certified mail to the civil-process clerk at the United States attorney's office; |
| (B) | | send a copy of each by registered or certified mail to the Attorney General of the United States at Washington, D.C.; and |
| (C) | | if the action challenges an order of a nonparty agency or officer of the United States, send a copy of each by registered or certified mail to the agency or officer. |

FED. R. CIV. P. 4(i)(1).

Upon review, McCarthy's suit is subject to dismissal under this body of law.  First, plaintiff has not actually effected service of the *operative* pleading—the Second Amended

---

[5]  Plaintiff has named the Postmaster General, not the Postal Service, as the defendant in this action.  Although in Title VII cases the employer (and not the supervisor of the head of the company) is usually the appropriate defendant, it appears that in employment discrimination suits the Postmaster General is the correct defendant to name.  *See, e.g.*, *Mathirampuzha v. Potter*, 371 F. Supp. 2d 159, 163 (D. Conn. 2005) ("[T]he proper defendant in a Title VII case brought by a USPS employee is the Postmaster General.").

Complaint that was docketed in this action on January 27, 2020. Dkt. No. 6. "It is well

established that an amended complaint ordinarily supersedes the original and renders it of

no legal effect." *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668-69 (2d Cir. 1977).[6] As the

Postmaster General correctly points out in reply, McCarthy "asserts generally that the [U.S.

Attorney's Office] was served on May 5, 2020, [but] he does nothing to dispute the fact that

the [Second Amended Complaint] is not among any of the documents served on the [office],

or, for that matter, the Attorney General and the Postmaster General." Def.'s Reply, Dkt. No.

27 at 7.

Second, McCarthy has failed to rebut the Postmaster General's assertion that he

failed to timely serve a summons on the U.S. Attorney's Office by the June 1, 2020 deadline

imposed by Judge Baxter's April 15 text order. Dkt. No. 14. Instead, plaintiff mailed a copy

of a summons on June 8, 2020. *See* Dkt. No. 19. Although the Court recognizes there may

have been some initial confusion in light of the fact that the Clerk initially issued only a

summons as to the Postmaster General, Dkt. No. 7, the Court later extended the deadline for

service and reissued an appropriate set of summonses, Dkt. Nos. 9-10. Of course, a failure

to serve a summons renders service of process defective. *See, e.g.*, *Osrecovery, Inc. v. One*

*Grp. Int'l, Inc.*, 234 F.R.D. 59, 61 (S.D.N.Y. 2005) (distinguishing between a "minor or

technical failure, such as misspelling a defendant's name" and "a complete disregard for the

---

[6] Although the Postmaster General has not directly flagged this issue, there remains some ambiguity about how the distinction between *filing* an amendment and *serving* that amendment impacts the 12(b)(5) analysis. *See, e.g.*, *TCS Capital Mgmt., LLC v. Apax Partners, L.P.*, 2008 WL 650385, at *10 (S.D.N.Y. Mar. 7, 2008) (explaining that some courts within this Circuit "hold that service of the original complaint after an amended complaint has been filed is ineffective" but noting that the Second Circuit in *Vesco* held that a pleading is not superseded until service is effected). *Vesco* involved a default judgment and other unique factors, but in any event the ambiguity proves irrelevant here because plaintiff's complaint is also subject to dismissal on other, independent grounds.

requirement that a summons be served").

 Third and most importantly in light of his *pro se* status, McCarthy has failed to show good cause to excuse these procedural failures.  "The plaintiff bears the burden of proof in showing that it had good cause in not timely serving the defendant." *George*, 221 F. Supp. 3d at 432 (citation omitted).  "Good cause is measured against the plaintiff's reasonable efforts to effect service and the prejudice ot the defendant from the delay, and the court should look to whether the plaintiff was diligent in making reasonable efforts to effect service." *Id*. at 432-33.  As noted above, the Court extended the service deadline and directed the Clerk to clear up any confusion by reissuing an appropriate set of summonses.  Dkt. Nos. 9-10.  And counsel for the Postmaster General wrote to plaintiff on May 26, 2020 explaining that he was obligated to serve both a summons and the latest version of his pleading under the strictures of Rule 4(i), which governed service on governmental defendants.  Ex. B to Stack Decl., Dkt. No. 21-2 at 54-55.  Accordingly, plaintiff's pleading is subject to dismissal under Rule 12(b)(5).

 **B. <u>Rule 12(b)(6)</u>**

 "Even in the absence of good cause, however, district courts have discretion to grant extensions of time to effect proper service." *George*, 221 F. Supp. 3d at 433.  However, that course of action would be inappropriate in this case because McCarthy's various pleadings fail to state any plausible claims for relief.

 In his Second Amended Complaint, McCarthy alleges that the Postmaster General discriminated against him based on his sex and disability in violation of Title VII.  Dkt. No. 6 at 2.  According to plaintiff, he was subjected to a "failure to promote," "unequal terms and conditions of employment," a "reduction in wages," and "retaliation" as a result of (1) the *quid*

*pro quo* arrangement between Brimmer and LaValley and/or (2) Snyder's prior relationship to Merithew, the postal employee plaintiff reported to the police for theft.  Dkt. No. 6 at 3.

Title VII "requires a plaintiff asserting a discrimination claim to allege two elements:  (1) the employer discriminated against him (2) because of his race, color, religion, sex, or national origin."  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015).  "As to the first element, an employer discriminates against a plaintiff by taking an adverse employment action against him."  *Id*.  "As to the second element, an action is 'because of' a plaintiff's race, color, religion, sex, or national origin where it was a 'substantial' or 'motivating' factor contributing to the employer's decision to take the action."  *Id*.

"At the pleadings stage, then, a plaintiff must allege that the employer took adverse action against [him] at least in part for a discriminatory reason, and [he] may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination."  *Vega*, 801 F.3d at 87.

McCarthy has alleged that Snyder failed to promote him to Postmaster of the Canton Post Office.  From this language, it also appears that plaintiff was later demoted by some decisionmaker, possibly Snyder.  Both events constitute adverse employment actions for the purpose of sustaining a Title VII discrimination claim.  *See, e.g.*, *Vega*, 801 F.3d at 85 ("Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation."); *Gutierrez v. City of N.Y.*, 756 F. Supp. 2d 491, 502 (S.D.N.Y. 2010) (analyzing Title VII claim based on a "failure to promote").

However, even construed liberally McCarthy's submissions fail to establish that any of

these events occurred under circumstances giving rise to even a minimal inference of discriminatory intent.  At best, plaintiff has alleged that Snyder passed him over for the Canton Postmaster job because plaintiff reported Merithew, one of Snyder's former employees, for postage stamp theft.  Plaintiff also complains of the relationship between Brimmer and LaValley, but does not even begin to explain how either person influenced the Canton hiring decision, which was made by Snyder as Review Committee Chairperson.  Dkt. No. 6 at 19.  And plaintiff does not even begin to explain how the alleged demotion resulted from misconduct attributable to any of these individuals.

In other words, McCarthy's claims are about alleged favoritism, not gender or sex discrimination.[7]  But simple favoritism is not actionable discrimination under Title VII absent some minimal indication that it is motivated by an intent to discriminate on the basis of a plaintiff's protected characteristic.  *See, e.g.*, *Rowe v. N.Y. State Dep't of Tax & Fin.*, 2018 WL 3384429, at *6 (N.D.N.Y. July 10, 2018) (dismissing *pro se* pleading alleging failure to promote where plaintiff's complaint "repeatedly indicates it is nepotism, not racism, that seems to motivate the selection of these applicants").

McCarthy's claim of Title VII retaliation is also subject to dismissal.  "[F]or a retaliation claim to survive a . . . motion to dismiss, the plaintiff must plausibly allege that:  (1) defendants discriminated—or took an adverse employment action—against him; (2) 'because' he has opposed any unlawful employment practice."  *Vega*, 801 F.3d at 90.  In the context of a retaliation claim, "an adverse employment is any action that 'could well

---

[7]  Plaintiff has also checked the box for "disability" discrimination, but he does not explain this point further.  The EEOC document attached to his opposition indicates that plaintiff suffers from a generalized anxiety disorder.  Again, however, plaintiff has not explained how that ailment is connected to Snyder's conduct vis-a-vis the Canton job or to the Brimmer/LaValley plot.

dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* (cleaned up).  "This definition covers a broader range of conduct than does the adverse-action standard for claims of discrimination . . . the anti-retaliation provision, unlike the substantive discrimination provision, is not limited to discriminatory actions that affect the terms and conditions of employment." *Id.*

Even under this relaxed standard, it seems doubtful that McCarthy's police report about Merithew constitutes "protected activity" under Title VII.  As the Postmaster General appropriately acknowledges, a direct report to law enforcement can qualify as protected activity if the police complaint pertains to improper behavior that is part and parcel of the discriminatory conduct of which the plaintiff complains. *Labonia v. Doran Assocs., LLC*, 2004 WL 1921005, at *10 (D. Conn. Aug. 25, 2004).

For instance, a report to authorities has been held to satisfy this requirement where a plaintiff alleged in a police report (which charged battery) that her supervisor touched her in an inappropriate manner in the workplace during work hours. *Worth v. Tyler*, 276 F.3d 249, 265 (7th Cir. 2001).  Here, however, McCarthy has alleged that he reported Merithew for postage stamp theft, not anything related to sex discrimination.

Beyond this threshold failure, McCarthy has also failed to plausibly allege that Snyder passed him over for the promotion *because* he turned in Merithew to the police.  To be sure, "[c]ourts in the Second Circuit have taken a 'generous' view of retaliatory acts at the motion to dismiss stage." *Ingrassia v. Health & Hosp. Corp.*, 130 F. Supp. 3d 709, 723 (E.D.N.Y. 2015).  But plaintiff has not alleged that Snyder, or any other member of the hiring committee, knew about plaintiff's report at the time they made their decision. *Cf. Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 609 (E.D.N.Y. 2013) (dismissing ADA

retaliation claim where, *inter alia*, plaintiff failed to "allege that defendant was aware of [the] protected activity or considered that protected activity in deciding [to take adverse action against] plaintiff").[8]

The Court has also reviewed McCarthy's prior pleadings, Dkt. Nos. 1, 5, to determine whether these other submissions might help shed some light on his claims and render them plausible for purposes of 12(b)(6) review. *Cf. Boguslavsky v. Kaplan*, 159 F.3d 715, 719 (2d Cir. 1998) ("[C]ourts may look to submissions beyond the complaint to determine what claims are presented by an uncounseled party.").

McCarthy's First Amended Complaint alleges wrongdoing beginning in May of 2011 and running through April of 2016, but like his Second Amended Complaint, this older pleading fails to provide details that might connect those alleged events to any circumstances that might give rise to a plausible inference of discrimination or retaliation. Dkt. No. 5.

The closest McCarthy comes might be in this second pleading, where he claims that he was reassigned to the Dexter Post Office on a full-time basis after Glenda McDermid, a fellow employee at the Watertown Post Office, gave his job to her own daughter, Dallas Breseleen Childers. Dkt. No. 5 at 3.

However, this allegation is insufficient for three reasons. First, there is no indication of when this event occurred or of how this event is connected to Snyder's conduct or to Brimmer/LaValley's conduct. Second, as with Snyder and Brimmer/LaValley, this allegation sounds like favoritism or nepotism, not actionable sex discrimination. Third, and perhaps

---

[8] To the extent McCarthy's pleading might be understood as an attempt to connect his prior EEOC complaint (from 2016) to Snyder's refusal to recommend him for promotion to Postmaster (in January of 2019), those two events (without some further explanation as to how they are connected) are "far too attenuated a series of circumstances to establish even a minimal inference of causation." *Rowe*, 2018 WL 3384429, at *6.

most importantly, simply being reassigned to a different office without any material change in circumstances (*e.g.*, pay, hours, benefits, or responsibilities) does not constitute an adverse employment action for purposes of Title VII. *See, e.g.*, *Whethers v. Nassau Health Care Corp.*, 956 F. Supp. 2d 364, 376 (E.D.N.Y. 2013).

The same general shortcomings are true of McCarthy's initial complaint, which again alleges sex-based discrimination but complains of events that happened with his family. Dkt. No. 1. Even read in combination with one another, these three pleadings do not begin to provide the factual detail necessary to suggest actionable discrimination aimed at a protected characteristic. Accordingly, plaintiff has failed to state any plausible claims.

## V. CONCLUSION

As a final matter, the Postmaster General asserts that leave to further amend should be denied because plaintiff has already had three opportunities to attempt to state a plausible federal claim. Generally speaking, "[a] pro se complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (citation omitted). However, if the problems with a complaint are "substantive" rather than the result of an "inadequately or inartfully pleaded" complaint, an opportunity to re-plead would be "futile" and "should be denied." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

Upon review, the problems with McCarthy's pleading are substantive. As the preceding discussion shows, plaintiff's factual allegations concern alleged favoritism (between Brimmer and LaValley or between Snyder and Merithew) rather than any plausible Title VII claim for sex-based discrimination or retaliation. Accordingly, granting further leave

to amend is unlikely to be productive.

Therefore, it is

ORDERED that

1.  The Clerk of the Court shall amend the caption to reflect that Louis DeJoy has

succeeded Megan Brennan as the Postmaster General;

2.  The Postmaster's motion to dismiss is GRANTED; and

3.  McCarthy's complaint is DISMISSED.

The Clerk of the Court is directed to terminate the pending motions and close the file.

IT IS SO ORDERED.


Dated:  September 16, 2020
        Utica, New York.

United States District Judge

- 17 -